Kent, J.
The material facts on which I found my opinion in this case, are the followihg:
• About the year 1750, Eytie Moore was in possession of the *259 premises, and there arose a dispute respecting the same, between her and the ancestor of the lessor of the plaintiff. It was settled by reference, and Judge De Lancey was the referee. In .consequence of this reference, *Mrs. [*215] Moore surrendered the premises to the ancestor of the lessor of the plaintiff, and acknowledged him as her landlord.
This I do not regard as a fraudulent proceeding on her part, but as a prudent act, and for the best interest of her daughters who were infants and heirs at law, and of whom she was the natural guardian. It was a fair and amicable settlement of a question respecting the premises, and preferable, perhaps, to taking other steps which would involve her and her children in an expensive law suit. None of her acts, however, could destroy or weaken the rights of her children, but I consider them, as dispossessing the infants of the premises, and transferring that possession to the ancestor of the lessor of the plaintiff, and who afterwards devised the premises to one of the lessors. These daughters had their election on' coming of age, to disaffirm all these proceedings, to recover the possession back, and call on Van Rensselaer to account to them for the rents and profits.(a) They came of age about ten years after the reference, and consequent acts of their mother, to wit, in 1760 and 1761, and they married shortly after they respectively came of age. No act was done by them- after they came of age, nor by their husbands after their marriage, that showed a dissent from what their mother had done; on the contrary, it appears that their respective husbands offered to purchase of Van Rensselaer. Miller and his wife worked on the premises for the widow, on shares, and then moved away in the year 1774, and left her in the sole occupation. She continued, from time to time, to acknowledge herself tenant, and to pay rent to the ancestor of tlie plaintiff. This acknowledgment she made in 1773, and paid rent as late as the year 1783. Here was, I consider, a *260 possession of the premises by the ancestor of the lessors for upwards of thirty years, and which continued for more than ten years after the daughters came of age, and. with the knowledge and assent of them and of their husbands. They were, therefore,, barred of their right of entry by not bringing their’suit,-according to the directions of the statute of limitations, within ten years next after their respec[*216] tively ■ *coming of age.(a) .1 am, therefore, of opinion, that their subsequent entry in 1785, was tortv ous ; that the ancestor of the lessor had,acquired a. right of possession, which he devised to One of the lessors before his ouster, and' consequently, that the plaintiff is entitled to recover,
Benson, J. was of the same opinion. . , -
R&dcliff, J. not having heard the argument in the.cause, gave no opinion.
Lewis, J.
The question is whether John I, Van Rensselaer, or the ancestor under whom he claims, ever had such a possession of the premises, as- will entitle him to recover.in this action. It was admitted by his counsel, that Mrs.' Moore could do nothing to prejudice the inheritance, but it was insisted that her daughters ought to have entered,within the ten years after they came of age, being the time allowed by the statute,, and that having neglected so to do, they are barred of their remedy, and that John Van Rensselaer, deceased; thereby acquired such a right of possession as will be sufficient for his representative, John I. Van Rensselaer, to *261 recover in the present action. These conclusions appear to be deduced from. false premises. - They are founded on the supposition that Mrs. Moore had an independent possession of the premises, at the time of her agreement with John . Van Rensselaer. But the fact is not so. If she had a possession, it must have been as tenant to. her son, and her attornment to a stranger was void by the statute; for it was not in consequence of a judgment at law, or a decree of a court of equity, nor by consent of her landlord, who was an infant. Nor could the mere receipt pf rent by Rensselaer, independent of the statute, have given him. a possession, so as to take it out of the person in whom the right was, without an actual entry. (Bul. N. P. 102.) And according to 1 Rol. Ab. 659, pi. 12, he must actually put the tenant out of possession. The fact, however is, that Mrs. Moore was neither a tenant, nor had any transferable possession of the premises during the infancy of her children, and therefore John Van Rensselaer could acquire none from her. Whether she acquired a possession ^'subsequently to the [*217] year 1760, the period at which her eldest daughter arrived at age, is not material to inquire; because, between that period, and the year 1785, when her daughters came again into possession, there was not, deducting the period of the war, a possession of twenty years in the widow. In strictness, she acquired no possession until Miller and his wife quitted' her in 1774. To establish this position we must examine the relation in which Mrs. Moore stood, at the death of her husband, to his children, and the estate that descended from him to them. She was at first guardian in socage to her infant son, and at his demise, became so to her daughters, who were his heirs. She was the person on whom, by law, this species of guardianship devolved; and had she even been a stranger to them, so careful is the law to protect the rights of infants, that it is in their election, at any time to consider her such or not. “ If a stranger en-tereth into the lands of an infant within the age of fourteen and taketh the profits of the same, the infant may charge him as guardian in socage, and after the age of fourteen years he *262 shall be charged as bailiff at any time before or after his age of twenty-one years.” (Go. Lit. 89 b. and 90 a. See" also, Cro. Car. 229, Cro- Jac. 219, and Fitzh.. 118 b.) The same rule, in effect, obtains in equity. “ If a stranger enters and receives the profits of an infant’s estate, he shall, in the consi-. deration of the court, be looked upon as a trustee for-the infant.” It was so ruled by Ld. Chan. Jefferies, in the case of Lord -Falkland, (2 Tern. 342.) In the case of Dormer v. Fortesque, (3 Atk. 130.) Lord Hardwicke establishes the rule agreeably to the authority of Lord Coke. “ Every person (says he) who enters on the estate of an infant, enters as a guardian or bailiff for the infant.” As far as respects the case before the court, the difference between a guardian and bailiff is in name only, Each is liable to' account, and neither can do any act to prejudice the infant. As to the guardian’s interest in the estate of the ward) there- is some diver-sity of sentiment, which will be found, however, not [*218] to affect this *case. He can make leases and? grant copies ; hence some have held that he had. an inr terest; but the better, and much more general opinion will be found to- be, that the demise is, in the one case, to be considered as the act of the infant by his guardian, and that the copyholder in the other is in by the custom.. The advocates of the former opinion, however, admit that his interest is not forfeitable or transferable.
In the case of Shoplane v. Roydle, (Cro. JaC. 98,) three of the judges, against Walmsley, insisted that a guardian in so-cage, had ah interest; and they inferred it from his having-power to make, leases) and to make avowry in.his own name and right, and they referred to the case of Osborn v. Carden& Joy, (Plowd. 293,) in which case the estate and interest of the guardian is spoken of as enuring to the'use of the infant; and it. is expressly adjudged, that the use shall be required by the infant of every one who has the land, and that the guardian shall oust every one that holds the land to another purpose; and in respect to leases, they are said to be; in effect, the acts of the infant by his guardian. The estate and interest here spoken of clearly mean not a beneficial or transferable interest.
*263 In Willis v. Whitewoods, (1 Leo. 312,) it is adjudged by-Anderson, J. and Windham, J. that a guardian has no interest whereby he can accept a surrender, but has only power by law, to take the profits to the use of the heir, and if he enter for a condition broken, it must be in the name and right of the heir. In Fitzherbert, 118 h.-it is said that a guardian in socage hath no right unto the land but as bailiff. In equity, guardianship in socage is a trust, and not a profit. (1 P. Wms. 704, 721.) But whether he has or has not an interest, is not material in the present case, since his interest is not transferable, and he can do no act but such as is for the infant’s benefit. In Hargrave’s 13th note on Coke’s Commentary on the 123d sec. of Lit. it is said to be settled, that a guardianship in socage, is wholly for the infant’s benefit, and is not a subject of alienation, forfeiture or succession.; and in the Commentary, the reason assigned why such guardian shall not present to a *benefice, in right of [*219]. the heir, is, because he cannot account therefor, as he can make no benefit thereof, the- law abhorring simony ,• thus clearly establishing what was before observed, that his powers extend to such acts only, as shall benefit the estate, and for which he can account.
From these several authorities and the state of the evidence, the following conclusions appear to me satisfactorily to result:
1. That the possession of a guardian, if any he has, is of a special and qualified nature, recognized only where it is to benefit the estate of the heir, but in no instance where it ma.y injure it.(a)
2. That it appears to be the better opinion,' that the pos *264 session of the estate is, in law, in the infant; and that the guardian has only an authority over it in regard to the rents and profits.(a)
3. That, in the present case, the infants were in the actual possession; for if their guardian could transfer an interest to John Yan Rensselaer, it must have been one held adversely to the infants; and as they were living on the farm, they would be adjudged in possession, according to the rule, that “ where two are in possession, the possession is to be judged in him that hath the right.” (Hob. 322.)
4. That the mere receipt of rent by John Yan Rensselaer, without an actual entry, did not give him a possession, so as to take it out of those in whom the right existed.
5. That if John Yan Rensselaer had been actually in possession, as between him and the grantors of the defendant, he would have been a mere trustee, and accountable to them as guardian or bailiff, until they arrived at age, when they defeated the trust by taking the management into their own hands, and so incapable of maintaining this action against . their representative.(b)
*265 My opinion, therefore, is that the verdict ought to be entered for the defendant.
Lansing, Ch. J. was of the same opinion.
■[As Radcliff, J. gave no opinion, and. the other judges were equally divided, no judgment was rendered.]

 See 3 Wits. 523, 524, 527. If a person jointly interested with an infant, renew a lease to himself, the infant, if the lease prove beneficial, may hold him to have acted as trustee. 1 Bos. &, Bull. ,37.6.

. (a) See 2 R. L. 185,. § 3. By the Revised Statutes, P. 3, ch. 4, tit. 2, art. 1, “ Of the time of commencing actions relating to real property ” it is provided, “ If any person entitled to commence any action in this article- specified, or to make" any entry, avowry or cognizance, be at the time such title shall first descend or accrue, either, 1. Within the age of twenty-one years : or, 2. In-, sane: or, 3. Imprisoned on. any criminal charge; tir in execution upon some conviction of a criminal offence for- any term less than for life : or, 4. A married woman ; the time during which such disability shall continue, shall not' be deemed any portion of the time in this article limited for the commencement of such suit, or the making such entry, avowry or cognizance : but such person may bring such acti'on/or make such entry, avowry Or. cognizance, after the said time so limited; and within ten years after- such disability removed, but not after that period.” 2 R. S. 2d edit. 223, § 16.

 A guardian can do no act to the injury of his ward. Jackson v. Sears, 10 Johns. R. 435. Rogers v. Conger, 7 id. 557. See also Forster v. Fuller, 6 Mass. R. 58. Jones v. Brewer, 1 Pick. 314. As, if a guardian enfeoff another in fee of the lands of his ward, both feoffor and feoffee are disseisors. So if a guardian accepts a feoffment from his ward,, he is considered as a disseisor, and liable to be treated as such. Bro. Disseisin,. 95. But generally those acts of a guardian are binding on the infant, which are for the infant’s benefit, and for which the guardian can account. Capehart v. Administrators of Huey, 1 Hill, S. Ca. 409. See Tallitt v. Tallitt, Amb. 370.

ia) A guardian in socage has the custody of the land of the infant heir, and receives the profits for his benefit. He has such an interest in the estate as will authorize him to lease it, or avow in his own name. Of course he may maintain trespass. (But see Longstreet v. Tilton, Cox. 38.) Byrne v. Van Hoesen, 5 Johns. R. 66. Com. Dig. tit. Guardian in Socage. Cro. Jac. 98. Truss v. Old, 6 Rand. 556. Bacon v. Taylor, Kirby, 368. See also Magruder v. Peter, 4 Gill & Johns. 323. (But it is otherwise with a natural guardian. May v. Calder, 2 Mass. R. 55. Anderson v. Darby, 1 N. & M. 369. Miles v. Kaigler, 10 Yerger, 10.) The law will presume that the infants are seised of the premises, in consequence of the rightful possession of the guardian in socage, until he is guilty of an act, which is of itself a disseisin of the infants, as by selling and assigning the premises in fee. Putnam v. Ritchie, 6 Paige; 390, 399. Podger’s case, 9 Coke, 106, a. Goodtitle v. Newman, 3 Wils. 516. Bro. Abr. 235, tit. Descent, pi. 19.

 “ But where a man who has no title to be guardian, enters as guardian into the lands of an infant, it is at the election of the infant to make him a disseisor on account of his wrongful entry, or waive the wrong, and call him to account as guardian. (1 Roll. Abr. 661, Cro. Car. 221, and he must account for the profits throughout, though the' entry be not made for several years after the infant comes of age, 1 Abr. Eq. 280. Yallop and Holworthy, and see 1 Venn. 295.) So, if guardian in socage occupy after the heir attains the *265 age of fourteen, he may be charged as bailiff. (2 Inst. 380.)” Bing, on Inf. & Cov. 175.